UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
JAMES BONINI
CLERK

10 FEB -2 AM 11: 17

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | | |
|---|---|---|
| RAHAL LETTERMAN RACING, LLC, an Ohio limited liability company, | : | Case No. 2:10 cv 0092 |
| Plaintiff, | : | Judge JUDGE SARGUS |
| v. | : | MAGISTRATE JUDGE ABEL |
| CEALLAIGH GROUP, LLC, a Delaware limited liability company, and DAFCA, INCORPORATED, a Delaware corporation, | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Rahal Letterman Racing, LLC ("RLR"), through its attorneys, for its Complaint against Defendants Ceallaigh Group, LLC ("CG") and DAFCA, Incorporated ("DAFCA") (collectively, "Defendants"), alleges as follows:

### JURISDICTIONAL ALLEGATIONS

1. RLR is a limited liability company organized and existing under the laws of the state of Ohio, with its principal place of business located at 4601 Lyman Drive, Hilliard, Ohio 43026.

2. CG is a Delaware limited liability company and is the sole owner of DAFCA.

3. DAFCA is a Delaware corporation with its principal place of business located at 10 Speen Street, 2nd Floor, Framingham, Massachusetts.

4. This Court has jurisdiction over this action pursuant to 28 USC 1332 because DAFCA and CG are diverse in citizenship from RLR and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

5. Venue is proper in this district pursuant to 28 USC 1391 because the parties conducted substantial business in this venue and the facts giving rise to this action occurred in this venue.

## GENERAL ALLEGATIONS

6. RLR owns and operates a professional motorsports race team that has expertise in owning, testing, and racing, among other things, open-wheel cars competing in professional motorsports events sanctioned by the Indy Racing League ("IRL") and sportscars competing in professional motorsports events sanctioned by the American Le Mans Series ("ALMS").

7. RLR is owned by retired race car driver Bobby Rahal ("Rahal") and late-night talk show host David Letterman ("Letterman").

8. RLR traces its origin to the formation of Rahal/Hogan Racing in 1992, when Rahal realized a lifelong dream by forming his own race team. A three-time CART champion (1986, 1987, and 1992) as a driver, Rahal became the first owner-driver in series history to capture a championship when he led his team to four victories and the season title in the team's inaugural season. Rahal, who was also the 1986 Indianapolis 500 champion, concluded his Hall of Fame driving career in 1998 with 24 victories and 18 pole positions. Rahal was inducted into the International and U.S. Motorsports Halls of Fame in 2004. Most importantly, Rahal is known by those both in the racing community and in the business arena as a person of exemplary character and a man of his word.

9. Letterman, the host of the CBS-TV "Late Show with David Letterman," had casual discussions with Rahal about his interest in getting involved in racing as a participant since they met in 1986. In early 1996, the talk transformed into an agreement when Letterman became a minority owner in RLR.

10. Upon information and belief, CG is a private equity investment firm focused on national defense related technologies, supply chain management, telemedicine, and electronic financial services. Its business model also focuses on the adoption of new and innovative technologies by and within the national defense industry.

11. Upon information and belief, DAFCA, wholly owned by CG, is the premier provider of software solutions that automate and accelerate post-silicon system-on-a-chip validation, including software that provides anti-tampering and anti-counterfeit solutions within the broader realm of national cyber security.

12. On or about May 12, 2009, RLR and Defendants entered into a binding Letter of Intent ("LOI") for a motorsports sponsorship to be the primary sponsor of RLR's entry in the 2009 Indianapolis 500 Mile Race ("Indy"), the world-renowned, premier event of the IRL, which was held on May 24, 2009. The term of the LOI ended on June 7, 2009 (**Exhibit 1, ¶1**).

13. As the primary sponsor, Defendants were entitled to exclusivity in their industry and RLR agreed to refrain from entering into "any agreement for the identification, display, sponsorship, or promotion…that compete[d]" with Defendants. (**Exhibit 1, ¶2**).

14. In addition, RLR agreed to provide Defendants with Primary Corporate Partner logo identification in the principal locations on RLR's Indy race car, on RLR's Indy race car driver's uniform, and on team personnel clothing (**Exhibit 1, ¶3(a)**).

15. As RLR's Primary Corporate Partner, Defendants' logo was listed, displayed, identified, and promoted at RLR's sole cost (**Exhibit 1, ¶3(b)**).

16. As RLR's Primary Corporate Partner, Defendants also had the right, which they exercised, to use, display, and identify the RLR name, the RLR logo, photos of the RLR Indy race car and related designs, all of which included the use of RLR's trademarks, and to refer to the

3

RLR sponsorship in connection with Defendants' own advertising, marketing, and promotional campaign (**Exhibit 1, ¶3(c)**).

17.     As RLR's Primary Corporate Partner, Defendants were entitled to engage in any advertising and promotional activities as well as to prepare mutually agreeable press release materials relating to Defendants' sponsorship (**Exhibit 1, ¶¶4(a) & 4(b)**).

18.     As RLR's Primary Corporate Partner, Defendants were provided with six (6) tickets to an executive suite, which included all amenities, to view the 2009 Indianapolis 500 Mile Race (**Exhibit 1, ¶5**).

19.     As consideration for the RLR Primary Corporate Partner sponsorship for the 2009 Indianapolis 500 Mile Race, Defendants were obligated to pay RLR $200,000 in two (2) equal installments. Both installments were to be received by RLR no later than May 15, 2009 (**Exhibit 1, ¶6(a)**).

20.     Billed as "The Greatest Spectacle in Racing," Indy is the largest single-day sporting event in the world and, as such, is a highly unique and invaluable business and marketing platform. One such example of the powerful reach of Indy is that, in 2009, it is estimated that the race was viewed by 355 million households in 212 countries throughout the world.

21.     As RLR's Primary Corporate Partner, Defendants received substantial benefit from its sponsorship including, but not limited to, invaluable public exposure and business opportunities by gaining access to all Indy events, Indy advertising and promotional materials, and introductions to other Indy sponsors.

22.     RLR fully performed all of its duties and obligations required of it in the LOI.

23. Defendants breached the LOI because, among other reasons, they failed to pay RLR $200,000, despite RLR's repeated demands for payment. As of the filing of this Complaint, Defendants have paid RLR only $90,000 of the $200,000 obligation, which was paid before May 24, 2009 via wire transfer.

24. For the reasons outlined above, RLR has been damaged by Defendants' breach of the LOI and other tortious conduct.

## COUNT I
## BREACH OF CONTRACT

25. RLR reiterates and incorporates all prior allegations as if fully set forth herein.

26. RLR entered into a valid and legally binding LOI with Defendants.

27. These terms were bargained for by RLR and agreed to by Defendants.

28. RLR fully performed all of its duties and obligations as required by the LOI.

29. Defendants committed a material breach of the LOI because they failed to perform according to its terms, covenants, and conditions.

30. As a result of Defendants' breaches, RLR has been damaged.

31. RLR has been damaged in at least the amount of $110,000, plus interest, costs, attorneys' fees, and all other damages allowed by law.

WHEREFORE, RLR requests that this Court enter a judgment in its favor and against Defendants, jointly and severally, in the principal amount of $110,000, plus interest, costs, and attorneys' fees, and award it all other relief this Court deems equitable and just.

## COUNT II
## FRAUD (BAD FAITH PROMISE)

32. RLR reiterates and incorporates all prior allegations as if fully set forth herein.

33. Defendants knew at all material times hereto that RLR was relying upon, and in fact was induced by, their promise to pay RLR $200,000 according to the terms of the LOI.

34. Defendants represented and promised RLR that they would pay RLR $200,000 for the right to be RLR's Primary Corporate Partner for the 2009 Indianapolis 500 Mile Race.

35. Defendants' representations and promises were false, deceptive, and intentionally misleading when made since they, contrary to those representations, had no intention to pay RLR the $200,000 as promised.

36. Defendants had no intention to perform at the time they made the aforementioned promises to RLR.

37. In reliance on the representations made by Defendants, RLR provided Defendants with all of the benefits of being RLR's Primary Corporate Partner, as detailed above, for which Defendants have failed to fully pay.

38. Defendants' misrepresentations, bad faith promises, and omissions were known by Defendants to be false, misleading, and deceptive at the time they were made, were of a material nature, and were relied upon by RLR. As such, RLR has been damaged as a proximate result.

39. Defendants' conduct was fraudulent, deceitful, and oppressive, evidencing such wanton disregard for RLR's rights so as to entitle RLR to an award of punitive damages.

40. Accordingly, Defendants are liable to RLR for at least $110,000, plus interest, costs, and attorneys' fees and all other damages allowed by law, and for punitive damages in such an amount as to be determined by this Court.

WHEREFORE, RLR requests that this Court enter a judgment in its favor and against Defendants, jointly and severally, in the principal amount of $110,000, plus interest, costs,

attorneys' fees, and punitive damages, and award it all other relief this Court deems equitable and just.

## COUNT III
## PROMISSORY ESTOPPEL

41. RLR reiterates and incorporates all prior allegations as if fully set forth herein.

42. Defendants reasonably should have expected their representations and promises to pay for the RLR Primary Corporate Partner sponsorship to induce a definite and substantial act of forbearance or reliance by RLR.

43. RLR, to its detriment, did rely on Defendants' promises and in consequence, provided and continued to provide Defendants with the exclusive benefit of RLR's Primary Corporate Partner sponsorship for the 2009 Indianapolis 500 Mile Race.

44. Under these circumstances, justice requires that Defendants' promises be enforced and that RLR be compensated for its damages as a result of Defendants' improper and illegal conduct.

45. RLR has been damaged in at least the amount of $110,000, plus interest, costs, and attorneys' fees as a result of Defendants' failure to abide by their representations and promises.

WHEREFORE, RLR requests that this Court enter a judgment in its favor and against Defendants, jointly and severally, in the principal amount of $110,000, plus interest, costs, and attorneys' fees, and award it all other relief this Court deems equitable and just.

## COUNT IV
## QUANTUM MERUIT/UNJUST ENRICHMENT

46. RLR reiterates and incorporates all prior allegations as if fully set forth herein.

47. RLR provided Defendants with the exclusive benefit of RLR's Primary Corporate Partner sponsorship for the 2009 Indianapolis 500 Mile Race.

48. Defendants obtained a substantial benefit from their sponsorship, as detailed above.

49. Defendants have not fully compensated RLR as promised.

50. Allowing Defendants to retain the benefits of the RLR Primary Corporate Partner sponsorship without fully compensating RLR would be inequitable.

51. Allowing Defendants to retain benefits of the RLR Primary Corporate Partner sponsorship without fully compensating RLR would result in Defendants' unjust enrichment at RLR's expense.

WHEREFORE, RLR requests that this Court enter a judgment in its favor and against Defendants, jointly and severally, in the principal amount of $110,000, plus interest, costs, and attorneys' fees, and award it all other relief this Court deems equitable and just.

## COUNT V
## ACCOUNT STATED

52. RLR reiterates and incorporates all prior allegations as if fully set forth herein.

53. RLR provided Defendants with the exclusive benefit of RLR's Primary Corporate Partner sponsorship for the 2009 Indianapolis 500 Mile Race.

54. RLR invoiced Defendants in the agreed upon amount of $200,000.

55. Defendants received RLR's invoice without voicing objection to the charges set forth therein (**Exhibit 2**).

56. Accordingly, the account as between RLR and Defendants accordingly has become stated.

57. Defendants have failed and refused to make full payment, as promised.

58. RLR has suffered damages in the amount of $110,000, plus interest, costs, and attorneys' fees.

WHEREFORE, RLR requests that this Court enter a judgment in its favor and against Defendants, jointly and severally, in the principal amount of $110,000, plus interest, costs, and attorneys' fees, and award it all other relief this Court deems equitable and just.

Respectfully submitted,

/s/ Gregory S. Peterson
Gregory S. Peterson, Esq.    0061915
250 Civic Center Drive
Plaza One, Suite 650
Columbus, Ohio 43215
Telephone: 614-365-7000
Facsimile: 614-220-0197
gpeterson@petersonellis.com


/s/ Eric D. Scheible
Eric D. Scheible
Jonathan D. Ordower
Frasco Caponigro Wineman & Scheible, PLLC
1668 Telegraph Road, Suite 200
Bloomfield Hills, MI 48302
(248) 334-6767
es@frascap.com
jdo@frascap.com
MI Bar No. P54174
MI Bar No. P58015

Dated: February 2, 2010         Attorneys for Plaintiff

9